UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-06-083 |
| | § | CIVIL ACTION NO. H-07-3075 |
| LUIS FERNANDO JUAREZ, | § | |
| | § | |
| Defendant-Petitioner. | § | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
AND RECOMMENDATION THAT ALL RELIEF BE DENIED ON PETITIONER'S
§ 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**

This matter was referred to the undersigned Magistrate Judge, pursuant to a recommendation from same, to conduct an evidentiary hearing on two of Petitioner Luis Fernando Juarez's claims: (1) that the underlying order of deportation is invalid because he attained United States citizenship through his naturalized mother; and (2) that his trial counsel was ineffective for failing to investigate and assert his derivative United States citizenship as a defense to the charges. An evidentiary hearing was commenced on June 1, 2009, and reconvened and concluded on June 17, 2009. At that evidentiary hearing, the Magistrate Judge received the parties' Joint Statement of Facts, and heard evidence and argument of counsel. Having had the benefit of counsel's arguments and post-hearing submissions, the Magistrate Judge concludes as follows:

**Issues to be Resolved**

Although this case was referred to the undersigned to conduct an evidentiary hearing on the two aforementioned claims, the Court has no jurisdiction to <u>decide</u> citizenship issues. Such decisions are reserved to the Court of Appeals. 8 U.S.C. § 1252(a)(5), (b)(5); *Omolo v. Gonzales*, 452 F.3d 404, 406 (5th Cir. 2006).

Despite the lack of jurisdiction to decide whether Juarez is or became a United States citizen under 8 U.S.C. § 1432(a), the Court can consider and decide whether Juarez could have mounted a viable challenge to the charges at issue by claiming citizenship under 8 U.S.C. § 1432(a), and whether his counsel was ineffective within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984) for failing to do so. Therefore, it is that issue – whether a viable citizenship challenge to the charges against Juarez could have been made – that will be resolved herein in connection with the following proposed findings of fact and conclusions of law. Also at issue are the three other sentencing related claims Juarez raised in his § 2255 motion: that his sentence exceeds the maximum allowed by law; that his sentence was improperly enhanced; and that his sentence runs afoul of *United States v. Booker*, 543 U.S. 220 (2005).

**Proposed Findings of Fact**

1.  On March 15, 2006, Juarez was charged by Indictment with making a false representation of United States citizenship in violation of 18 U.S.C. § 911, and illegal reentry into the United States following deportation, in violation of 18 U.S.C. § 1326(a) and (b)(2). (Document No. 1).

2.  On May 12, 2006, Juarez pled guilty, without a plea agreement, to both counts alleged in the Indictment. (Document No. 20).

3.  At his Rearraignment, Juarez stated that he was a citizen of Mexico. Rearraignment Transcript (Document No. 37) at 13.

4.      On September 15, 2006, following the preparation of a presentence investigation report ("PSR"), to which Juarez filed Objections (Document No. 25), the District Court sentenced Juarez to 36 months confinement on count one, to be followed by a 1 year term of supervised release, and 42 months confinement on count two, to be followed by a three year term of supervised release, with the terms of confinement and supervised release to run concurrent. (Document No. 29). A Judgment of Conviction was entered on September 20, 2006. (Document No. 31).

5.      Juarez did not appeal. Juarez's trial counsel, Lazaro Izaguirre, discussed with Juarez at the time of his sentencing, his right to appeal. Juarez did not indicate to Izaguirre, in any way, that he wanted to appeal. Evidentiary Hearing Transcript June 17, 2009 (Document No. 75) at 41-42.

6.      Juarez did not, at any time prior to filing his § 2255 Motion to Vacate, Set Aside, or Correct Sentence, argue, refer to, or make mention in any court filing, of a claim to United States citizenship through 8 U.S.C. § 1432(a).

7.      In his § 2255 Motion to Vacate, Set Aside, or Correct Sentence, Juarez raised five claims:
   a.   that his illegal re-entry conviction is based on an invalid order of deportation;
   b.   that his trial counsel was ineffective in investigating the possible defenses to the charges;
   c.   that his sentence exceeds the maximum allowed by law;
   d.   that his sentence was improperly enhanced under § 2L1.2(b)(1)(B) of the sentencing guidelines; and
   e.   that his sentence, which was based on factors not admitted by him or found by a jury beyond a reasonable doubt, runs afoul of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005).

With respect to the first two claims, Juarez maintains that the order of deportation, upon which the illegal re-entry charged was based, was invalid because he was, or was eligible to become, a United States citizen. Juarez maintains that he was eligible for automatic citizenship based on the fact that his mother became a naturalized citizen when he was under the age of 18, and while he was living in the United States under her care. In his second claim, Juarez alleges that his counsel was ineffective for failing to investigate his citizenship as a defense to the charge. According to Juarez, because he was automatically eligible for United States citizenship by virtue of his mother's naturalization, counsel should have challenged the offense charging him with misrepresenting his citizenship, should have challenged the prior order of deportation as being invalid, and should have challenged the illegal re-entry charge.

8.      Juarez was born on February 28, 1983, in Guanajuato, Mexico. His parents, Fernando Juarez Rodriguez and Angelica Maria Sancen Huerta, were married at the time of his birth.

9.      In 1988, Juarez's father, Fernando Juarez Rodriguez, died.

3

10.     In late spring or early summer of 1989, at the age of six, Juarez entered the United States with his mother, Angelica Maria Sancen Huerta.  Juarez's alien number is 70728390.

11.     On July 3, 1990, when he was seven, Juarez's mother applied for a voluntary departure and employment authorization for Juarez.  The application was approved pursuant to the Family Fairness Program for the period of March 12, 1991, through March 12, 1992, and was subsequently renewed, on February 26, 1992, for another year.

12.     On October 25, 1992, Juarez's mother applied for Family Union Benefits for Juarez, who was then nine years old.   That application was denied on December 14, 1992.

13.     Juarez's mother claims to have filed an I-130 Petition (for Alien Relative) for Juarez in December 1994, when Juarez was eleven years old.  There is no record of that application.

14.     On June 18, 1999, Juarez's mother became a naturalized United States citizen.  Juarez was sixteen years old at the time.

15.     On December 17, 1999, Juarez married Misty Jo Quiles, a United States citizen.

16.     On January 7, 2001, after he married, but while he was still under eighteen years of age, Juarez filed an I-485 (Application to Register Permanent Resident or Adjust Status).  His wife at the time, Misty Jo Quiles, also filed an I-130 petition (for Alien Relative) for Juarez.

17.     On August 1, 2002, at the age of eighteen, Juarez was convicted in the 232nd District Court of Harris County, Texas of possession of cocaine (less than one gram).  He was sentenced on that offense to 90 days imprisonment.

18.     On September 25, 2002, the INS issued a Final Administrative Removal Order for Juarez, and he was, pursuant thereto, deported to Mexico on October 12, 2002.  Prior to this deportation, Juarez had lived "permanently" in the United States from the time of his 1989 entry.  *See* Joint Statement of Facts at 2.

19.     Juarez does not recall when he returned to the United States following his deportation in October 2002.  He, however, was present in the United States in April 2005, when he represented himself to be a United States citizen in his attempt to purchase a firearm.

20.     Juarez was charged by Indictment in the instant case on March 15, 2005.

21.     While this case was pending, Juarez married Corina Marie Jimenez on June 17, 2006.

22.     On September 11, 2007, while he was serving his term of imprisonment in the instant case, Juarez filed a N-600 Application for Certificate of Citizenship and the instant § 2255 Motion to

Vacate, Set Aside or Correct Sentence. Juarez's N-600 application was denied on November 13, 2007.

23. Juarez claims he first became aware of the possibility that he derived United States citizenship from his naturalized mother in August 2007, while imprisoned on the conviction entered in this case. Prior to that time, he had not mentioned to anyone, including his trial counsel, the possibility that he was a United States citizen by virtue of his mother's naturalization. Evidentiary Hearing Transcript (Document No. 65) at 14.

24. Juarez's trial counsel, Lazaro Izaguirre, knew that Juarez's mother had become a naturalized citizen prior to Juarez attaining the age of eighteen. Evidentiary Hearing Transcript June 1, 2009 Document No. 65) at 13, 30; Evidentiary Hearing Transcript June 17, 2009 (Document No. 75) at 37, 45.

25. Juarez's trial counsel, Lazaro Izaguirre, had never heard of derivative citizenship under 8 U.S.C. § 1432(a) until he received a copy of Juarez's § 2255 Motion to Vacate, Set Aside or Correct Sentence. Evidentiary Hearing Transcript June 17, 2009 (Document No. 75) at 35. Izaguirre was never told by Juarez or anyone else that Juarez was potentially a United States citizen by virtue of Juarez's mother's naturalization. *Id.* at 35, 37. Izaguirre had no idea at the time he represented Juarez that derivative citizenship was a possible defense to the charges. *Id.* at 47.

26. Immigration Services, in determining whether a person such as Juarez could claim derivative citizenship under 8 U.S.C. § 1432(a), only looks to whether the person claiming citizenship was under 18 at the time of the surviving parent's naturalization, and whether that person was a lawful permanent resident either prior or subsequent to the parent's naturalization. Evidentiary Hearing Transcript June 1, 2009 (Document No. 65) at 46. The focus on legal permanent residence status exists despite the fact that an immigration law treatise, KURZBAN'S IMMIGRATION LAW SOURCEBOOK 11th Ed. (1990); Government's Exhibit 3, upon which Immigration Services relies, indicates that legal permanent residence status is not necessarily required. *Id.* at 57-61, 70.

**Proposed Conclusions of Law**

1. This Court cannot decide whether Juarez is a citizen under 8 U.S.C. § 1432(a). That decision can only be made by the Fifth Circuit Court of Appeals. *Omolo*, 452 F.3d at 406; *Jordan v. Attorney General of United States*, 424 F.3d 320, 326 (3d Cir. 2005). This Court can, however, decide whether Juarez could have mounted a viable citizenship defense to the charges against him. *See e.g., Jimenez v. United States*, 284 Fed. Appx. 668, 2008 W.L. 2607263 (11th Cir. 2008), *pet for cert. filed*, January 23, 2009.

2.Citizenship is a defense to both the offenses of which Juarez was convicted.  See 18 U.S.C. § 911; 8 U.S.C. § 1326(a),(b)(2); *United States v. Meza-Soria*, 935 F.2d 166 (9th Cir. 1991); *United States v. Ortiz-Lopez*, 24 F.3d 53 (9th Cir. 1994); *United States v. Garcia-Mancha*, 2001 W.L. 282769 *8-9 (N.D. Tex. 2001).

3.In June of 1999, when his mother became a naturalized citizen, 8 U.S.C. § 1432(a) provided for derivative citizenship as follows:

> (a) A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, *becomes* a citizen of the United States upon fulfillment of the following conditions:
> (1) The naturalization of both parents; or
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
> (3) The naturalization of the parent having legal custody of the child where there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

The parties dispute whether Juarez meets the requirements of subsection (5).  The Government maintains that Juarez does not meet the requirements of subsection (5) because he had not resided in the United States "pursuant to a lawful admission for permanent residence."  Juarez, in contrast, maintains that he meets the requirements of subjection (5) because he resided "permanently in the United States while under the age of eighteen years" (the language in subsection (5) following the second comma).

4.The courts that have addressed the meaning of that part of subsection (5) that follows the comma have generally held that for a child of a naturalized parent to "thereafter begin[s] to reside permanently in the United States while under the age of eighteen years" the child must have either attained some type of legal status in the United States, *see Romero-Ruiz v. Mukasey*, 538 F.3d 1057, 1062 (9th Cir. 2008) (An interpretation that a child needs only to reside permanently in the U.S. regardless of legal status "is unreasonable and contrary to the natural reading of the language . . . The phrase . . . alters timing of the residence requirement, not the requirement of legal residence."); *Baez-Aranda v. Gonzales*, 235 Fed. Appx. 481 (9th Cir. 2007) (where defendant did not seek to change his

6

legal residence status to permanent until after he was eighteen, he could not be said to have resided in the United States permanently prior to eighteen), or there must be some "*official* objective manifestation of the child's permanent residence."*Ashton v. Gonzalez*, 431 F.3d 95 (2d Cir. 2005)(emphasis added). *But see United States v. Diaz-Guerrero*, 132 Fed. Appx. 739 (9th Cir. 2005) (holding that mere continual presence in the United States is sufficient to satisfy the requirements of subsection (5)).[1]

---

[1] In *Diaz-Guerrero*, an unpublished decision from the Ninth Circuit Court of Appeals, subsection (5) was interpreted as follows:

> . . . . The 1982 version of Subsection (5) of the statute was written in the disjunctive. While in the first clause of the subsection Congress limited citizenship to those individuals " residing in the United States pursuant to a lawful admission for permanent residence at the time of naturalization of the parent last naturalized," in the second clause Congress omitted the " lawful admission" language and simply stated that a minor may gain citizenship if he " thereafter begins to reside permanently in the United states while under the age of eighteen years." No legal status is mentioned in this clause. " It is a 'well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words,' and [the court] must assume that the difference in usage is legally significant." *Padash v. INS*, 358 F.3d 1161, 1169 n. 7 (9th Cir. 2004) (quoting *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003)). If Congress intended to limit derivative citizenship to those with a legal status, it could have plainly stated so.

132 Fed. Appx. at 740-41. In *Romero-Ruiz*, a published opinion issued by the Ninth Circuit three years after *Diaz-Guerrero*, a completely different interpretation of subsection (5) is offered:

> The threshold issue in this appeal is one of pure statutory interpretation: whether a petitioner claiming derivative citizenship need only establish that he was "permanently residing" in the United States during or after his parent's naturalization, or whether he must also establish that he was residing in the United States in some lawful status. We conclude that, in order to obtain the benefits of derivative citizenship, a petitioner must not only establish permanent residence, but also demonstrate that he was residing in some lawful status.

> "The starting point for any statutory interpretation is the language of the statute itself." *Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir.2007). Under former 8 U.S.C. § 1432, a child born outside the United States to alien parents becomes a citizen upon the naturalization of the parent having legal custody (where there has been a legal separation of the parents) or the mother (if the child was born out of wedlock) if (1) "such naturalization takes place while such child is under the age of eighteen years,"

5.      At the time Juarez' mother was naturalized in June 1999, Juarez was sixteen years old. However, when Juarez got married six months later, in December 1999, he could no longer be considered a "child" for purposes of attaining citizenship under 8 U.S.C. § 1432(a). *See* 8 U.S.C. § 1101(c)(1) (definition of child).

6.      Juarez was not a permanent legal resident either before or after his mother's naturalization, and therefore he does not meet the requirements in the first part (before the comma) of subsection 5, 8 U.S.C. § 1432(a).

7.      Juarez attempted to legalize his status in January 2001, while he was still under the age of eighteen. Because, however, Juarez had gotten married in December 1999, he was no longer a "child" for purposes of 8 U.S.C. § 1432(a), and therefore his efforts to obtain legal status are irrelevant to whether he meets the requirements of subsection (5) of 8 U.S.C. § 1432(a).

---

> and (2) "such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent ... or thereafter begins to reside permanently in the United States while under the age of eighteen years." 8 U.S.C. § 1432(a) (repealed 2000).
>
> A plain reading of the statute evidences the requirement that the child be residing pursuant to lawful admission either at the time of the parent's naturalization or at some subsequent time while under the age of 18. The phrase "or thereafter begins to reside permanently" alters only the *timing* of the residence requirement, not the requirement of *legal* residence.
>
> Romero-Ruiz argues that the plain language of the statute demands a different interpretation: that a child otherwise meeting the qualifications becomes a citizen if he is residing in the United States as a legal permanent resident at the time of his parent's naturalization *or* if he is residing permanently in the United States (regardless of legal status) at the time of the naturalization. This interpretation is unreasonable and contrary to the natural reading of the language. To interpret the second clause as conferring derivative citizenship on children who otherwise meet the requirements as long as they are permanently living in the United States would render the first clause-requiring legal permanent residence-superfluous. It is a well-established principle of statutory construction that legislative enactments should not be construed to render their provisions "mere surplusage." *Am. Vantage Cos. v. Table Mountain Rancheria,* 292 F.3d 1091, 1098 (9th Cir.2002).

*Romero-Ruiz*, 538 F.3d at 1062-63. As *Romero-Ruiz* was a published opinion and the Ninth Circuit's latest ruling on the meaning of subsection (5), and is not wholly inconsistent with the Second Circuit's position in *Ashton*, it is viewed as having more precedential value than *Diaz-Guerrero*.

8.      Juarez had no legal status in the United States at the time of, or subsequent to, his mother's naturalization. In addition, prior to his marriage in December 1999, at which time he was no longer considered a child for purposes of derivative citizenship under § 1432(a), there was no "official objective manifestation" of Juarez's permanent residence in the United States. While Juarez did obtain a voluntary departure and employment authorization for a period of two years, March 1991- March 1993), that authorization was, by its own terms, temporary. There are no other immigration records evidencing a official objective manifestation of Juarez's permanent residence in the United States. The mere fact that Juarez was present in the United States and intended to remain is insufficient to satisfy the residence requirements of subsection (5). *See Ashton*, 431 F.3d at 98 ("Ashton argues that his intent to reside permanently in the United States, coupled with his presence here, was sufficient to establish that he did reside here permanently. We disagree.").

9.      Claims of ineffective assistance of trial counsel are generally measured by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

10.     A defendant's trial counsel has the duty of ensuring that the defendant's plea is knowingly and voluntarily made. *United States v. Diaz*, 733 F.2d 371, 375 (5th Cir. 1984); *Hill v. Estelle*, 653 F.2d 202, 206 (5th Cir.), *cert. denied*, 454 U.S. 1036 (1981). If a petitioner claims that counsel has not discharged this duty, habeas relief is available *only* if the petitioner can establish that counsel's performance in connection with the plea was deficient or incompetent, and that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-9 (1985); *Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir. 1987).

11.     Juarez's counsel was not ineffective for failing to raise a derivative citizenship challenge to the charges against Juarez. Although the record is clear that Juarez was under the age of eighteen at the time his mother (his surviving parent) was naturalized, no showing has been made that Juarez was either a permanent legal resident at the time of his mother's naturalization, or that he had attained some legal status in the United States subsequent to his mother's naturalization. Juarez therefore never met the requirement(s) of subsection (5) of 8 U.S.C. § 1432 either at the time of his mother's

9

naturalization or at any time prior to losing his status as a child upon his marriage.  Based on various courts' interpretations of subsection (5), including that of the Ninth Circuit in *Romero-Ruiz*, Juarez could not have raised a viable citizenship challenge to the charges against him.  Therefore, Juarez's trial counsel's failure to investigate and raise a derivative citizenship defense did not prejudice Juarez within the meaning of *Strickland. E.g., Jimenez*, 284 Fed. Appx. 668.  In addition, given the courts' interpretation of subsection (5) of 8 U.S.C. § 1432(a),  Juarez was given constitutionally adequate advice by counsel, and his guilty plea was neither unknowing or involuntary.

13.     Juarez's claims related to the calculation of his sentence, none of which was raised on appeal, are procedurally barred from review.  *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996); *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *United States v. Acklen*, 47 F.3d 739, 741-42 (5th Cir. 1995); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  In addition, any claim by Juarez that the Court misapplied the Sentencing Guidelines or miscalculated his sentence are claims that are not cognizable under 28 U.S.C. § 2255.  *United States v. Payne*, 99 F.3d 1273, 1281-82 (5th Cir. 1996) ("A district court's technical application of the Guidelines does not give rise to a constitutional issue."); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995) ("A district court's calculation under or application of the sentencing guidelines standing alone is not the type of error cognizable under section 2255."), *cert. denied*, 516 U.S. 1165 (1996).  Finally, because Juarez has fully served his term of imprisonment and makes no claim that the Court incorrectly calculated his term of supervised release, his claims related to the calculation of his term of imprisonment are moot.  *See generally Lane v. Williams*, 455 U.S. 624, 631 (1982) ("Since respondents elected only to attack their sentences, and since those sentences expired during the course of theses proceedings, this case is moot.").

**Recommendation**

Based on the foregoing proposed Findings of Fact and Conclusions of Law, the Magistrate Judge

RECOMMENDS that all relief be DENIED on Petitioner Luis Fernando Juarez' s § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 34).

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual

findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 15th day of September, 2009.

Frances H. Stacy
United States Magistrate Judge